Angela S. FANELLI, Plaintiff,

v.

CENTENARY COLLEGE, Defendant.

No. CIV.A. 02–2004(MLC).

United States District Court,
D. New Jersey.

Nov. 27, 2002.

Stanley B. Cheiken, Esquire, Marlton at Lexington, Pennsauken, NJ, for Plaintiff.

Steven Gerber, Esquire, Gerber & Samson, L.L.C., Wayne, NJ, for Defendant.

## MEMORANDUM OPINION

HUGHES, United States Magistrate Judge.

Plaintiff objects to the Defendant videotaping her discovery deposition and seeks a protective order. In support of the application, she submits a letter from her treating psychiatrist asserting that the videotaping of the deposition will aggravate certain existing symptoms of her Post Traumatic Stress Disorder. The Defendant opposes the application by first arguing that the application should be summarily denied because good cause justifying such a protective order has not been shown. If, however, the Court is inclined to entertain such an application, the Defendant then seeks discovery of Plaintiff's psychiatric records and a mental examination before a final decision is made. By agreement of Counsel, the Court considered the matter by exchange of letter memoranda and a conference call [unrecorded] conducted on November 18, 2002. For the following reasons, the Plaintiff's application is denied and the videotaped discovery deposition shall proceed in accordance with this Opinion.

## I. BACKGROUND

The Plaintiff, Angela S. Fanelli, Ed.D. (Dr. Fanelli), filed a Complaint against the Defendant, Centenary College (Centenary), on

April 26, 2002. Essentially, the Complaint alleges breach of contract based upon the Defendant's failure to conduct a hearing before terminating the Plaintiff's employment as Director of Graduate Studies. The filing in federal court is based upon diversity jurisdiction. 28 U.S.C. § 1332. Centenary fired Dr. Fanelli when it learned that she apparently hid the fact that she was under indictment in the United States District Court in the Eastern District of Pennsylvania at the time of her hiring. Between the time of her hiring and her termination, Dr. Fanelli pled guilty, along with her husband, to conspiracy to embezzle pension funds in violation of 18 U.S.C. § 371. The Plaintiff claims that as part of her employment contract, she was entitled to a hearing and certain other procedural rights before her employment could have been terminated.

The current application stems from a notice by Centenary that it intended to videotape Dr. Fanelli's discovery deposition on October 21, 2002. Coincidentally, the deposition had been scheduled to take place at the United States Courthouse because Plaintiff's Counsel had indicated at the FED. R. CIV. P. 16 conference that his client may be expected to invoke Fifth Amendment or spousal immunity privileges in answer to certain questions. The Court required the deposition to take place at the Courthouse for ease and convenience on ruling on expected privilege issues. After receiving notice that the deposition was to be videotaped, Plaintiff's Counsel advised Centenary's Counsel that Dr. Fanelli objected to the videotaping of the deposition because her discomfort at being videotaped would result in an aggravation of certain psychiatric symptoms and would result in stress, which would in turn result in her giving less than her best testimony.

By agreement of Counsel, resolution of the issue proceeded by way of submission of letter memoranda and subsequent conference call rather than by formal notice of motion which would have caused unnecessary delay. Plaintiff submitted letter memorandum, dated October 24, 2002, attaching a letter from the Plaintiff's treating psychiatrist which states that Dr. Fanelli suffers from "Acute Post Traumatic Stress Disorder and a Dys-

thymic Disorder, i.e., clinical depression, secondary to numerous life stressors including loss of her academic positions." (Dr. Markow Letter of October 23, 2002). The letter further states that at a recent session, the Plaintiff had expressed anxiety relating to the videotaping of her deposition. Plaintiff's psychiatrist further states that some of the symptoms of her illness "include difficulty with focusing, attention span, and recall." *Id.* Finally, her psychiatrist states that in his opinion, videotaping will "increase her anxiety and not allow her to answer questions as clearly and directly as she could with less anxiety." *Id.* Accordingly, the Plaintiff seeks a protective order precluding the videotaping of her deposition.

The Defendant responded by letter memorandum, dated October 31, 2002, asserting that the application for a protective order should be summarily denied because good cause had not been demonstrated. (*See* Def.['] Letter Mem. dated October 31, 2002). Centenary argues that it has an explicit right, pursuant to the FEDERAL RULES OF CIVIL PROCEDURE 30(b)(2), to conduct the Plaintiff's deposition by videotaping and, further, that "increased anxiety" does not constitute "good cause" necessary for a protective order. (*See id.* at 5). The Defendant asks that the application for a protective order be denied and that the videotaping of the Plaintiff's deposition be permitted. (*See id.*). Alternatively, Defense Counsel seeks to propound additional discovery, including interrogatories, requests for medical records, possible depositions, and a psychiatric examination if the Court is inclined to grant the application for a protective order based upon Plaintiff's submissions. (*See id.* at 3, 6).

Finally, the Court conducted a conference call [unrecorded] on November 18, 2002 to inquire whether either party had any additional information or argument. The parties relied upon the letter memoranda previously submitted.

## II. DISCUSSION

The FEDERAL RULES OF CIVIL PROCEDURE explicitly provide that depositions may be conducted by videotaping. FED. R. CIV. P. 30(b)(2). The current rule (FED. R. CIV. P.

30(b)(2)) permits "sound and visual" recordings of depositions and, thus, "recognizes the routine nature of non-stenographic recording." *Gillen v. Nissan Motor Corp.*, 156 F.R.D. 120, 122 (E.D.Pa.1994). Indeed, courts have long held that "the use of videotaped testimony should be encouraged and not impeded because it permits the jury to make credibility evaluations not available when a transcript is read by another." *Weiss v. Wayes*, 132 F.R.D. 152, 155 (M.D.Pa.1990).

The reasons why courts approve of videotaping seem readily apparent. Unlike a transcript, a videotape addresses important credibility concerns, such as "demeanor and appearance of the witness." *Weiss, supra.* at 155. Acknowledging that words themselves may carry only a limited meaning, courts have also held that "facial expressions, voice inflection and intonation, gestures, 'body language' ... may all express a message...." *Riley v. Murdock*, 156 F.R.D. 130, 131 (E.D.N.C.1994); *accord, Alexander v. FBI*, 186 F.R.D. 123, 127 (D.D.C.1998).

The use of videotaped depositions is considered most often in the context of hearings or trials where the witness/deponent is unavailable to appear "live" in court, or *de bene esse depositions.* However, as the cost of the videotaping process may continue to decrease, lawyers may seek to videotape more discovery depositions of witnesses whose credibility, in one way or the other, is likely to be a factor at trial. It seems apparent that the factors justifying videotaping *for de bene esse* depositions apply equally well to the use of videotaped depositions where the witness does appear in court and for the limited purpose of impeachment. For example, the use of videotape for impeachment purposes would give the fact finder the benefit of the witness' "body language" in testifying at a deposition as compared to the "body language" of the witness testifying in court. Determining that this is a significant comparison, one court found that "[t]he video deposition is allowed because it is a superior method of conveying to the fact finder the full message of the witness in a manner that assists the fact finder in assessing credibility...." *Riley, supra.* at 131.

In order to overcome the expressed preference for videotaped depositions, a party or witness may seek a protective order pursuant to FED. R. CIV. P. 26(c), which provides that a court may "protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense...." FED. R. CIV. P. 26(c). The Third Circuit Court of Appeals has held that "absent exceptional circumstances, protective orders should not serve to interfere" with court proceedings. *In re Grand Jury*, 286 F.3d 153, 159 (3d Cir.2002).

■ However, the Court may, in its discretion, enter a protective order upon a showing of good cause, for which the movant bears the burden of persuasion. *Pansy v. Borough of Stroudsburg*, 23 F.3d 772 (3d Cir.1994). The *Pansy* Court went on to hold that "good cause is established on a showing that disclosure [here, videotaping] will work a **clearly defined** and **serious injury** to the party seeking closure. The injury must be shown with **specificity**." *Pansy, supra.* at 786 (emphasis added). Good cause cannot be established upon some general or speculative alleged harm.

## III. ANALYSIS

■ In her letter memoranda, the Plaintiff cites to a case where a party was granted a protective order limiting disclosure of psychiatric records because a specific showing of a "clearly defined" and "serious injury" was made. *Caver v. City of Trenton*, 192 F.R.D. 154, 162 (D.N.J.2000) (quoting *Publicker Indus., Inc. v. Cohen*, 733 F.2d 1059, 1071 (3d Cir.1984)). Specifically, in *Caver*, the party was asserting the patient-psychiatrist privilege and offered specific evidence that disclosure would have a chilling effect on police officers providing full and frank information to police department psychiatrists, thereby interfering with effective evaluation and treatment. *Caver, supra*, at 163. Notably, there is no assertion here by either Dr. Fanelli or her psychiatrist that videotaping her deposition would have a deleterious effect on her treatment or otherwise exacerbate her various disorders.

It is indeed true that Dr. Markow unequivocally states that some symptoms of Plaintiff's illness may be made worse with increases in anxiety and that videotaping will increase her anxiety. However, it can also be fairly said that any anxiety Plaintiff may experience was triggered by her filing this lawsuit. It can also be fairly said that any of the symptoms that may be aggravated by that anxiety ("focusing, attention span, recall") relate directly to her credibility which may be a central issue in the case for the fact finder to resolve. Finally, there is no claim that the videotaping would lead to a worsening of her psychiatric condition. Lawsuits, by the very nature of involving dispute resolution, create varying degrees of anxiety in even those who enjoy excellent mental health.

In the Court's view, permitting claims of anxiety in litigation to measure up to *good cause* would assure that little or nothing would ever be accomplished in conducting discovery and preparing for trial. In fact, the Court is hard pressed to imagine how the Plaintiff could go forward with testimony before a judge and jury if her anxiety would be so disabling with the simple videotaping of her deposition. As the Defendant points out, Dr. Markow does not distinguish between the deposition itself and the videotaping of it in offering the opinion that it would cause anxiety. Indeed, anyone who has experienced being deposed could reasonably say that the deposition itself creates a certain amount of anxiety.

Significantly, Dr. Markow does not say that the Plaintiff is incompetent to testify. Nor does he explain how it is that videotaping, as opposed to making a mere stenographic record, would cause any greater anxiety, given Plaintiff's particular illness. Nor is the Court able to assess from Dr. Markow's letter exactly what specific effect that the videotaping would have on the Plaintiff's physical or mental health. Absent any such specific showing, the Court cannot find a "clearly defined" and "serious injury" as required by *Pansy* to demonstrate good cause. *See Pansy*, 23 F.3d at 786. Although unnecessary to decide here, had the Plaintiff made a *prima facie* showing of good cause, the

Defendant would then be entitled to conduct *surgical strike discovery* into the Plaintiff's general mental condition and the specific basis for seeking the protective order. Such discovery would ordinarily include the production of medical records and a limited mental examination pursuant to FED. R. CIV. P. 35.

On the other side of the coin, the Court has also assessed the utility of videotaped depositions, even when to be used later at trial for the limited purpose of impeachment. The wave of the future clearly lies in the use of electronic technology both in discovery and courtroom presentation. In a few years, it will be commonplace to use videotape instead of a cold transcript for purposes of impeachment of critical witnesses. Efficient and relatively inexpensive software (e.g., PowerPoint ©, Trial Director ©, etc.) continue to be available on the market. FED. JUDICIAL CTR. & NAT'L ADVOCACY CTR., EFFECTIVE USE OF COURTROOM TECHNOLOGY: A JUDGE'S GUIDE TO PRETRIAL AND TRIAL 9 (2001). Incorporating a video deposition into such software to impeach the witness at trial will ordinarily be less time consuming and more effective than fumbling back and forth referring the witness to lines and pages in a transcript.

In addition, the Court believes that videotaped discovery depositions may also lead to settlement sooner rather than later. Critical assessment of the strengths and weaknesses of a witness' expected trial testimony by viewing the deposition may provide invaluable insight into how a jury might view the particular testimony. In the Court's humble opinion, videotaping discovery depositions has the potential of greatly assisting the "just, speedy, and inexpensive determination" of every case as required by FED. R.CIV.P. 1.

Of course, the videotaping of depositions may also create the occasion for mischief just as other discovery devices may be abused from time to time, but that's what judges are for. For example, it should be of some comfort to the Plaintiff that her deposition will take place in the Courthouse where any legitimate complaint may be brought immediately to the Court's attention. In another similar

case, it may be appropriate to seek lesser protective measures like time limitations on the length of the deposition or reasonable recesses to allow consultation with a party's therapist or medical doctor.

Parenthetically, the Court notes that the Rules require that notice of the deposition include the "method by which the testimony shall be recorded." FED.R.CIV.P. 30(b)(2). Failure to identify the method, i.e., videotaping, sufficiently in advance of the deposition may result in a cancellation of the deposition with an assessment of fees and costs.

## IV. CONCLUSION

For the reasons expressed, the Court will deny the Plaintiff's application for a protective order precluding the videotaping of her deposition. The videotaped deposition shall proceed as noticed. An appropriate Order accompanies this Memorandum Opinion.