**CHARLIE and Nadine H., et al., Plaintiffs,**

v.

**Christine Todd WHITMAN, et al., Defendants.**

**Civil Action No. 99–3678 (SRC).**

United States District Court, D. New Jersey.

March 20, 2003.

Bruce S. Rosen, Esquire, McCusker, Anselmi, Rosen, Carvelli & Walsh, P.A., Chatham, NJ, for The New York Times, Intervener.

Marcia Robinson Lowry, Esquire, Susan Lambiase, Esquire, Eric Thompson, Esquire, Children's Rights, Inc., New York City, David L. Harris, Esquire, Patrick J. Whalen, Esquire, Michele Renee Nance, Esquire,

Lowenstein Sandler, P.C., Roseland, NJ, for the Plaintiffs.

Donald A. Robinson, Esquire, Robinson & Livelli, Newark, NJ, for The Star–Ledger, Intervener.

Alan C. Kessler, Esquire, Dana B. Klinges, Esquire, Charles M. Hart, Esquire, Robyn D. Levitan, Esquire, Wolf, Block, Schorr, Solis–Cohen, L.L.P., Cherry Hill, NJ, Stefanie A. Brand, Esquire, Deputy Attorney General in Charge of Litigation, Trenton, NJ, for the Defendants.

## MEMORANDUM OPINION

HUGHES, United States Magistrate Judge.

This matter comes before the Court upon Motion of The New York Times Company, publisher of *The New York Times* ("*The Times*") for leave to intervene in the above captioned matter pursuant to Federal Rule of Civil Procedure 24(b) for the limited purpose of clarifying and/or modifying the current Confidentiality Order and Stipulation dated June 25, 2002. Plaintiffs Charlie and Nadine H, as class representatives, have no objection, and in fact, have filed a Brief in support of *The Times'* Motion to Intervene. Additionally, the Court received a letter application dated February 12, 2003 from the Newark Morning Ledger Company, publisher of *The Star Ledger* ("*The Ledger*"), a New Jersey newspaper, requesting permission to join the Motion to Intervene filed by *The Times*.[1] Defendants Christine Todd Whitman[2], as Governor of the State of New Jersey; Michele K. Guhl, as Commissioner of the De-

partment of Human Services; Charles Venti, as Director of the Division of Youth and Family Services of the State of New Jersey ("Defendants"), however, oppose the Motion and have filed a separate Motion for a Protective Order.[3] On February 14, 2003, the Court granted permission to *The Ledger* to join the Motion to Intervene filed by *The Times*. On March 3, 2003, the Court granted the *The Times'* Motion to Intervene and *The Ledger's* application for intervention for purposes of being heard on issues relating to obtaining access to Defendants' documents.[4]

The Motion of the Interveners seeks to permit public disclosure of certain records produced in discovery by the New Jersey Division of Youth and Family Services ("DYFS"). The Motion for a Protective Order, citing a variety of state and federal statutes addressing confidentiality of such records and the agreed upon confidentiality order in place, seeks to preclude disclosure. The Court has reviewed the written submissions of the parties and conducted oral argument on March 3, 2003 and March 14, 2003.

For the reasons that follow, the Motion of the Interveners to disclose Defendants' documents is granted in part and denied in part, and the Interveners will be provided limited access to the DYFS records after certain reasonable limitations have been met.

## I. BACKGROUND

On August 4, 1999, Plaintiffs, Charlie and Nadine H., siblings aged eleven and nine, who have been in the custody and care of Division of Youth and Family Services for

---

1. As per letter application by *The Ledger,* it will join in the Motion to Intervene without filing separate papers and will rely on *The Times'* papers for purposes of simplicity pursuant to Local Civil Rule 1.1(b). (Robinson Letter dated February 12, 2003 at 1).

2. The current docket reflects Christine Todd Whitman as the Governor of New Jersey and while there has been no substitution of her as a defendant, the present Governor of New Jersey is James E. McGreevey. The parties have, on their own, substituted the prior named defendants with the individuals currently occupying the positions of the then defendants. However, the Court will use the names of the defendants as it appears on the current docket.

3. Defendants' arguments in support of a Protective Order are essentially the same as their arguments for opposing *The Times'* Motion to Intervene. Similarly, Plaintiffs' arguments in opposition to Defendants' Motion for a Protective Order are the same, as they filed only one Brief as both in support of *The Times'* Motion and in opposition to Defendants' Motion. Therefore, the Court will address both Motions in this Opinion in the context of the Motion to Intervene.

4. For ease of discussion, the Court will refer to *The Times* and *The Ledger* as Interveners and their Motion and application for intervention as a Motion for Intervention.

over five years, commenced this action by filing a 131 page, 409 paragraph Complaint. In their Complaint, Plaintiffs named and discussed twenty other plaintiffs, who also have been or are still under the custody and care of DYFS. The Plaintiff Class has been certified by the District Court and the class representatives are: Jason, Jennifer, and Patti W., siblings aged ten, eight, and six who were removed from their mother's custody three years ago; Dennis M. And Denise R., siblings aged eight and seven who were removed from their mother's custody in 1995; Marco and Juan C., siblings aged eight and ten who were removed from their mother's care for the second time in 1995; Dolores and Anna G., siblings aged four and seventeen months who have been in DYFS's custody since August 1998; Kyle J., age one-and-half who has been in foster care since birth; Ryan, Christopher, and Melissa H., siblings who currently live with their mother despite numerous reports of abuse and neglect; Ricky, Daniel, and Thomas M., siblings who currently live with their mother, but have spent most their lives in DYFS custody; and Barry M., age seventeen who has been in and out of DYFS custody since the age of four ("Plaintiffs or Plaintiff Class") as well as many others who, according to Plaintiffs, continue to live under abusive and neglectful environments. *Charlie H. and Nadine H. v. Whitman*, 83 F.Supp.2d 476, 480 (D.N.J. 2000).

Plaintiffs describe the details of the lives of other class members in DYFS's care to illustrate and allege a systemic failure on the part of the Defendants to protect the Plaintiffs from harm and to provide their families with support and services in order to maintain adequate health and safety. (Compl.¶ 27). Additionally, Plaintiffs allege and argue that the failure of the child welfare system is a result of poor management of DYFS. (Compl.¶ 28). Specifically, Plaintiffs allege that the overburdening of DYFS causes high turnover rates of caseworkers who provide direct services to the children in care. (Compl.¶ 31). In turn, the turnovers have resulted in gaps in providing services to the children in DYFS who eventually fall through the cracks. Again, Plaintiffs' Complaint goes on to describe the effects of these gaps in heart-wrenching detail by providing details of the abuses that the children have endured while in the custody of DYFS. For example, Plaintiffs allege sexual, physical and psychological abuses where in one instance, a plaintiff was nearly killed. (*See* Compl. ¶¶ 84, 85, 108, 127, 134, and 74). Furthermore, Plaintiffs allege the lack of medical services and other special needs that Defendants have failed to address. (*See* Compl. ¶¶ 93, 105, 107, 122, 131–32, 139, and 180). As the District Court noted, "there is no other term than tragic to summarize the facts as alleged by Plaintiffs." *Charlie H. and Nadine H.*, 83 F.Supp.2d at 480.

Most recently, the tragic death of Faheem Williams and the abuse of his siblings, who were familiar to DYFS, have encouraged the Plaintiffs and the Interveners to request a modification of the existing Confidentiality Order, which governs disclosure of discovery in this class action. Plaintiffs argue that in light of the ongoing institutional deficiencies, it is their hope that informing the public would place DYFS under public scrutiny and thereby encourage or facilitate an overhaul of the child welfare system to improve the lives of the state's most vulnerable children. The Interveners assert the public's right to know in support of their Motion and application for modification of the Confidentiality Order.

Plaintiffs and the Interveners contend that the existing Confidentiality Order is too broad. Specifically, the Interveners seek to permit disclosure of the following: (1) public disclosure of all discovery materials pertaining to child fatality and near fatality cases without redaction and (2) public disclosure of all discovery materials pertaining to living children subject to the redaction of the names or other identifying information pertaining to the children and their families. Moreover, the Interveners argue that Defendants have a burden of demonstrating that there is good cause to maintain the current Confidentiality Order especially when it involves issues of great public concern as here.

Defendants counter the Interveners by stating that disclosure of such sensitive and confidential information will compromise the anonymous reporting of abuse or neglect and

impact the privacy of the children and families involved with DYFS. Defendants argue that the information sought by the Plaintiffs and Interveners will only further sensationalize the tragic death of Faheem Williams rather than to inform the public and lead to meaningful compromise in the current system. The Interveners reply that it is precisely these potential failures that the public is concerned about and has a right to know before another tragic death occurs. The Interveners argue that the modification they seek will not jeopardize the privacy interests of the children and families involved in DYFS but balances those interests and the interests of the public's right to the information. Finally, Defendants argue that the information sought by the Interveners is protected by New Jersey statutes and therefore, simply cannot be compromised unless it is for research purposes of individuals involved in academia or professionals in the child welfare system.

## II. DISCUSSION

### A. Motion to Intervene

#### 1. Standing to Intervene

■ The Third Circuit Court of Appeals has held that "third parties have standing to challenge protective orders and confidentiality orders in an effort to obtain access to information or judicial proceedings." *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 777 (3d Cir.1994) (footnote omitted). The Third Circuit has explained that third parties have standing to intervene even though "they assert rights that may belong to a broad portion of the public at large. So long as the 'injury in fact' alleged by each intervener is a 'distinct and palpable injury to himself,' standing should not be denied 'even if it is an injury shared by a large class of other possible litigants.'" *United States v. Cianfrani*, 573 F.2d 835, 845 (3d Cir.1978) (quoting *Warth v. Seldin*, 422 U.S. 490, 508, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975)), *see also Pansy*, 23 F.3d at 777. As national newspapers reporting on news to the country, as well as, to issues specific to New Jersey, *The Times* and *The Ledger* have demonstrated that they have an interest in reporting to the citizens of New Jersey the state of its child welfare system in light of the abuse of Faheem Williams and his brothers.

#### 2. Permissive Intervention

■ Pursuant to Federal Rule of Civil Procedure 24, a person or an entity, who is not a named party in an action, may intervene in the interested litigation by serving a motion as provided in Federal Rule of Civil Procedure 5. *See* FED. R. CIV. P. 24(c). Intervention of right is inapplicable here as no statutes confer such a right nor do the Interveners have any requisite interest in the subject of the litigation as required by Rule 24(a). FED. R. CIV. P. 24(a). Accordingly, the Court will discuss whether *The Times'* and *The Ledger's* applications for intervention satisfies the requirements of FED. R. CIV. P. 24(b) which allows permissive intervention by an applicant. Federal Rule of Civil Procedure 24(b) provides in relevant part:

> [u]pon timely application anyone may be permitted to intervene in an action ... when an applicant's claim or defense and the main action have a question of law or fact in common.... In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.

FED. R. CIV. P. 24(b). The Third Circuit Court of Appeals held that Rule 24(b)'s requirement of a "question of law or fact in common" with the main action is satisfied when a "litigant who was not an original party to an action [seeks] to challenge protective or confidentiality orders entered in that action." *Pansy v. Borough of Stroudsburg*, 23 F.3d at 778. In support of this conclusion, the *Pansy* Court adopted the reasoning of the Ninth Circuit Court of Appeals in *Beckman Industries, Inc. v. International Ins. Co.*, where that Court found that " 'when interveners are not becoming parties to the litigation[,][t]here is no reason to require such a strong nexus of fact or law when a party seeks to intervene only for the purpose of modifying a protective order.' " *Id.* (quoting *Beckman Industries, Inc. v. International Ins. Co.*, 966 F.2d 470, 474 (9th Cir.1992),

*cert. denied,* 506 U.S. 868, 113 S.Ct. 197, 121 L.Ed.2d 140 (1992)).

■ Under Rule 24(b), the Court must first balance the prejudice and undue delay a potential intervener may cause when considering whether an application for intervention is timely. *Mountain Top Condo. Ass'n v. Dave Stabbert Master Builder, Inc.,* 72 F.3d 361, 369 (3d Cir.1995) (citing *In re Fine Paper Antitrust Litigation,* 695 F.2d 494, 500 (3d Cir.1982)). Although Defendants do not oppose *The Times'* and *The Ledger's* intervention for its failure to meet the requirements of Rule 24(b), they do oppose the Motion on the basis of futility. (Defs.['] Opp'n. Br. at 3). Clearly, *The Times* and *The Ledger* have timely filed a Motion to Intervene in the present matter as it relates to the tragic death of Faheem Williams which sparked further public interest in the welfare of New Jersey's most vulnerable children. Additionally, in balancing the public's interest to know the status of the children under DYFS' care with any prejudice and undue delay *The Times'* and *The Ledger's* intervention may cause to the parties here, the Court is satisfied that there will be minimal, if any prejudice or undue delay as a result of their intervention.

■ In addition to filing a timely application for intervention, the Court must consider whether *The Times* and *The Ledger,* who are not parties to the litigation, have a claim or defense that has a common question of law or fact as the main action. As publications, *The Times'* and *The Ledger's* interests are to disseminate news to the public and they do not have any claim or defense that has a common question of law or fact as the present action between Charlie H. and DYFS. However, as the Third Circuit has interpreted it, Rule 24(b)'s requirement that an applicant's claim or defense and the main action have a question of law or fact in common may be satisfied if its intervention is for the purpose of challenging a confidentiality or protective order. Here, *The Times* and *The Ledger* seek to intervene to do just that, to challenge the existing confidentiality order and to modify it. Essentially, *The Times'* and *The Ledger's* purpose for intervention is to gain greater access to Defendants' case

records, and to provide the public with a more comprehensive view of DYFS, and specifically, the children in its care. As such, *The Times* and *The Ledger* satisfy the Third Circuit's interpretation of Rule 24(b)'s requirement that a "question of law or fact in common" with the main action is not necessary when the applicant is not an original party to the action and is seeking to challenge the confidentiality order.

### B. *Confidentiality Orders*

#### 1. Good Cause Analysis

■ District Courts retain the power to modify or vacate confidentiality orders that it has entered. *See Pansy,* 23 F.3d at 784–85, and cases cited therein. The *Pansy* Court explained that when a party seeks to modify an order of confidentiality, the party "must come forward with a reason to modify the order." *See id.* at 790. Once the Court is satisfied that a reason exists to modify the order, the District Court must then "use the same balancing test that is used in determining whether to grant such orders in the first instance, with one difference: one of the factors the court should consider in determining whether to modify the order is the reliance by the original parties on the confidentiality order." *Id.* However, the *Pansy* Court made clear that the original parties' reliance on the protective order or order of confidentiality, is not outcome determinative, but simply, one of the factors the Court is to consider in making its modification determination. *Id.*

■ Also, the burden of showing good cause rests with the party seeking continued confidentiality when the confidentiality order sought to be modified is an "umbrella" confidentiality order. *See Cipollone v. Liggett Group, Inc.,* 785 F.2d 1108, 1122 (3d Cir. 1986), *cert. denied,* 484 U.S. 976, 108 S.Ct. 487, 98 L.Ed.2d 485 (1987). The Third Circuit explained that

> [i]t is correct that the burden of justifying the confidentiality of each and every document sought to be covered by a protective

order[5] remains on the party seeking the protective order; any other conclusion would turn Rule 26(c) on its head. That does not mean, however, that the party seeking the protective order must necessarily demonstrate to the court in the first instance on a document-by-document basis that each item should be protected. If is equally consistent with the proper allocation of evidentiary burdens for the court to construct a broad "umbrella" protective order upon a threshold showing by one party (the movant) of good cause. Under this approach, the umbrella order would initially protect all documents that the producing party designated in good faith as confidential. After the documents [are] delivered under this umbrella order, the opposing party could indicate precisely which documents it believed to be not confidential, and the movant would have the burden of proof of justifying the protective order with respect to those documents.

*Id.; see also Pansy*, 23 F.3d at 787 n. 17. In this case, under the terms of the Confidentiality Order, parties are allowed access to the DYFS case records and may disclose them only to parties designated under paragraph five of the Order. (Interim Confidentiality Order and Stipulation ¶ 5). Furthermore, should Plaintiffs wish to disclose any confidential materials to outside parties, they were to provide written notice to Defendants. (*Id.* ¶ 7). In addition, if the parties disagreed regarding the disclosure, Defendants would have the option of seeking a protective order from the Court within eight days of Plaintiffs' written notice to disclose. (*Id.*).

■ As the final paragraph of the Interim Confidentiality Order and Stipulation states, parties negotiated in good faith but "failed to reach an agreement as to the form of a protective order" and as a result, Plaintiffs stipulated to the terms of the Order to quickly obtain case records. (*Id.* ¶ 11). Moreover, Plaintiffs stipulated to the terms with a provision regarding possible future modification of the Order (*Id.*) and shortly thereafter filed a Motion for modification on May 19,

2000. At that time, the District Court denied Plaintiffs' Motion stating that "pursuant to Federal Rule of Civil Procedure 26, good cause exists for a protective order in this matter to 'protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense[.]'" (Order filed July 21, 2000). Once again, the burden is upon the party seeking to maintain the Confidentiality Order, in this instance, Defendants, to demonstrate why information sought should remain confidential.

The Third Circuit in *Glenmede Trust Co. v. Thompson* summarized the *Pansy* factors to be weighed in making a good cause determination as follows:

1) whether disclosure will violate any privacy interests;

2) whether the information is being sought for a legitimate purpose or for an improper purpose;

3) whether disclosure of the information will cause a party embarrassment;

4) whether confidentiality is being sought over information important to public health and safety;

5) whether the sharing of information among litigants will promote fairness and efficiency;

6) whether a party benefitting from the order of confidentiality is a public entity or official; and

7) whether the case involves issues important to the public.

56 F.3d 476, 483 (3d Cir.1995) (citing and summarizing *Pansy*, 23 F.3d at 787–91). As noted above, in addition to these factors, which the Third Circuit has made clear are neither "mandatory nor exhaustive," *see id.*, the court must weigh the original parties' reliance on the order of confidentiality to determine whether good cause still exists.

In its *Pansy* analysis, the Interveners contend that when privacy interests of the concerned parties are balanced against the benefits of public disclosure, there are mechanisms provided by Rule 26(c) that will favor disclosure. (*The Times*' Br. at 14). For

---

**5.** As the Third Circuit stated, "[p]rotective orders and orders of confidentiality are functionally similar, and require similar balancing ... and good cause must be demonstrated to justify the order." *Pansy*, 23 F.3d at 786.

example, the Interveners argue that redacting the identifying information from the case records will be one way to protect the privacy interest but at the same time allow public disclosure. (*Id.*). More importantly, the Interveners argue that when public entities are involved, such as here, the balance tips in the public's favor for obtaining access to the practices and policies of agencies like DYFS. (*Id.* at 15–16). Furthermore, Interveners argue that public's access to the information they seek is important to the health and safety of the children, and to the public that DYFS serves. (*Id.* at 16). Additionally, the Interveners argue that this case deals with matters that directly affect public policy which tips the balance in the public's favor to gain access to the internal workings of DYFS and the children and the families they serve. (*Id.*).

On the contrary, the Defendants argue that New Jersey law does not recognize a public's right to know when it involves children under the care of DYFS. (Defs.['] Mot. for a Protective Order at 6). In this vein, the Defendants contend that New Jersey statutes allow disclosure of DYFS information only to specified individuals, specifically, professionals who are conducting research in the field or police officers investigating a child abuse or neglect. (*Id.*) (citing N.J.S.A. 9:6–8.10(a)[6]). Similarly, Defendants argue that the New Jersey Administrative Code bars " 'informing the public regarding DYFS deficiencies leading to abuse and neglect of children in foster care[.]' " (*Id.* at 8). In addition to the statutes that Defendants cite as reasons why this Court should not provide access to the public of DYFS case records, they argue throughout their Brief in Opposition for Modification of the Confidentiality Order and in their Brief in support of their Motion for a Protective Order that they, nor do the Plaintiffs, have a legitimate purpose for releasing such confidential information to the public. (*See* Defs.['] Opp'n Br.; *see also* Defs.['] Mot. for a Protective Order). Therefore, the Defendants argue that under the law of New Jersey, the proposed information that Interveners seek to release to the public

is illegal and the Interveners should be prevented from doing so in the interest of justice.

As an initial matter, the Court finds that the Interveners have met their burden of showing that a sufficient reason exists to modify the existing Confidentiality Order and Stipulation in light of the uniquely tragic death of Faheem Williams and the horrendous abuse of his surviving siblings. The Court finds that the Interveners' need for DYFS' case records in order to make a comprehensive report to the public of the status of certain children currently under DYFS' care constitutes a sufficient reason to modify the Confidentiality Order and Stipulation, given reasonable limitations. Therefore, the Court will conduct a balancing of the respective interests and the *Pansy* factors.

It is clear that the involvement of a public entity in the litigation is a factor weighing greatly in favor of disclosure. The *Pansy* Court stated that

> It is appropriate for courts to order confidentiality to prevent the infliction of unnecessary or serious pain on parties who the court reasonably finds are entitled to such protection. In this vein, a factor to consider is whether the information is being sought for a legitimate purpose or for an improper purpose. However, privacy interests are diminished when the party seeking protection is a public person subject to legitimate public scrutiny. *Cf. United States v. Smith,* 776 F.2d 1104, 1114 (3d Cir.1985) ("[T]he public has a substantial interest in the integrity or lack of integrity or those who serve them in public office.")

*Pansy,* 23 F.3d at 787 (footnote omitted).

Here, Defendants are clearly public entities and public figures and specifically, DYFS is an entity established by the government to provide public services to abused and neglected children. DYFS is controlled by the State in all aspects. Accordingly, the Court finds that DYFS' privacy interests are diminished and certain information is subject to

---

**6.** The various N.J.S.A. statutes that the Defendants cite as authority for why case records should remain confidential and protected are mentioned later in the Opinion. *See infra* n. 7, p. 17.

disclosure. Furthermore, the Court is acutely aware that the subjects of the DYFS' case records are children, and indeed, New Jersey's most vulnerable children. The Court in no way wants to subject these children to more pain or embarrassment than they may have already suffered. However, the Court finds that the Interveners seek DYFS case records for a legitimate purpose, and not as the Defendants contend to compromise their confidential reporting system as well as the privacy interests of the parties involved. In order for the Interveners to thoroughly investigate and report comprehensively to the public, it is imperative that the Interveners obtain as much relevant information as possible. In this regard, certain discreet information in DYFS case records is clearly relevant.

Defendants rely on the Third Circuit's decision in *Pearson v. Miller* and argue that it is compelling authority for granting their request for a protective order. *Pearson v. Miller*, 211 F.3d 57 (3d Cir.2000). However, the Court finds this reliance to be misplaced. In *Pearson v. Miller*, the Court did recognize the compelling interest of the state in maintaining the various agency records confidential. However, that interest was diminished when Defendant Bruce Miller waived his right to confidentiality by signing an authorization for release of information. *Id.* at 61. More importantly, the Third Circuit in *Pearson* stated that "a federal court 'may see fit for special reasons to give the law of a particular state highly persuasive or even controlling effect, but in the last analysis its decision turns upon the law of the United States, not that of any state.'" *Pearson*, 211 F.3d at 67 (quoting *D'Oench, Duhme & Co. v. FDIC*, 315 U.S. 447, 471, 62 S.Ct. 676, 86 L.Ed. 956 (1942)) (emphasis omitted).

Thus, the Court finds that the Defendants need to do more than assert non-binding state confidentiality statutes to support their contention that release of case records may compromise the privacy interests. As the Third Circuit has repeatedly stated, " '[b]road allegations of harm, unsubstantiated by specific examples or articulated reasoning,' do not support a good cause showing." *Pansy*, 23 F.3d at 786 (quoting, *Cipollone*, 785 F.2d at 1121). The Court in *Pansy* also held that "good cause is established on a showing that disclosure will work a clearly defined and serious injury to the party seeking closure. The injury must be shown with specificity." *Id.* (quoting *Publicker Indus., Inc. v. Cohen*, 733 F.2d 1059, 1071 (3d Cir.1984)). Good cause cannot ordinarily be demonstrated on this basis of some speculative harm. *See Fanelli v. Centenary College*, 211 F.R.D. 268, 270 (D.N.J.2002). Finally, litigants should always be mindful that good cause is a fluid consideration. For example, good cause for non-disclosure of certain information may be demonstrated at the early discovery stage of a case but may not later be able to be justified during the course of a public trial.

In addition, the Court needs to consider whether the case involves issues important to the public. *See Pansy*, 23 F.3d at 788. "If a [confidentiality order] involves issues or parties of a public nature, and involves matters of legitimate public concern, that should be a factor weighing against entering or maintaining an order of confidentiality." *Id.* The Court agrees with the Interveners and Plaintiffs that this issue is of great public interest, impacting on the health and safety concerns of the children not only under the care of DYFS but others who may one day come into contact with DYFS. The only way for the public to know of the state of affairs of our child welfare system is to have reasonable access to case records that chronicle both DYFS' deficiencies and improvements, its "defeats" as well as its "victories." Furthermore, it is important that governmental entities be held accountable for their actions not only to prevent further tragedies like the case of Faheem Williams, but to answer to its citizenry, whose taxpaying dollars support DYFS. Of course, attempts to ensure this accountability have nationwide application and should not be limited by any fair analysis to New Jersey's child welfare system.

Next, the Court must consider the original parties' reliance on the Confidentiality Order and Stipulation. " 'The extent to which a party can rely on a [confidentiality order] should depend on the extent to which the order induced the party to allow discovery or

to settle the case.'" *Pansy,* 23 F.3d at 790 (quoting *Beckman,* 966 F.2d at 475–76). Defendants argue that they relied in good faith of the Confidentiality Order to protect its case records from disclosure. Clearly, as a public agency, Defendants must have been aware that, at some point, they may be required to provide public access to its records produced during discovery, given a legitimate reason to do so.

Finally, the *Pansy* Court held that "where it is likely that information is accessible under a relevant freedom of information law, a strong presumption exists against granting or maintaining an order of confidentiality whose scope would prevent disclosure of that information pursuant to the relevant freedom of information law." *Pansy,* 23 F.3d at 791. Defendants contend that this factor weighs against modifying the confidentiality order because under various New Jersey statutes [7],

7. Defendants cite New Jersey Statutes Annotated ("N.J.S.A.") 9:6–8.10(a); New Jersey Administrative Code (N.J.A.C.) 10:133G–2.1 as authority for mandating confidentiality of its case records and not recognizing a public's right to know. (Defs.['] Opp'n. Br. at 7). Furthermore, Defendants argue that "[t]he proper course of action for [the Interveners] would have been to file a request for the information [they] seek[ ] pursuant to the state's Open Public Records Act ('OPRA')" under N.J.S.A. 47:1A–1, *et seq.* Additionally, in their Motion for a Protective Order, Defendants refer to N.J.S.A. 9:3–54.2 as authority for protecting their case records from disclosure. (Defs.['] Mot. for Protective Order at 6).

8. The information that was deemed confidential and thus were protected from disclosure are as follows:

(1) Any information which identifies by name or address, or could reasonably lead to the disclosure of the name or address of any applicant for or recipient of child welfare, foster care or adoption assistance services; [42 U.S.C. 671(a)(8), 45 C.F.R. 1355.21];

(2) Any information related to the social and economic conditions or circumstances of a particular individual applicant for or recipient of child welfare, foster care or adoption assistance services; [45 C.F.R. 205.50];

(3) Any information related to the social and economic conditions or circumstances of a particular individual applicant for or recipient of child welfare, foster care or adoption assistance services; [45 C.F.R. 205.50];

(4) Agency evaluations of information about a particular individual applicant for or recipient of child welfare, foster care or adoption assistance services; [45 C.F.R. 205.50];

it is the state's mandate that the DYFS case records be kept confidential and not be made public unless it is for research purposes by professionals in the field. The Court agrees that the DYFS case records are not "public records." However, the Court in *Glenmede* made it clear that the *Pansy* factors are neither "mandatory nor exhaustive" 56 F.3d at 483, and in view of the Court's other findings in this Opinion, this particular *Pansy* factor is not determinative.

## 2. The Current Confidentiality Order

The Interim Confidentiality Order and Stipulation was filed on May 11, 2000 and broadly protected DYFS' case records from disclosure.[8] Subsequently, the Court filed a Confidentiality Order and Stipulation on June 26, 2002 which is currently in effect, essentially reinforcing all of the terms and

(5) Medical data concerning a particular individual applicant for or recipient of child welfare, foster care or adoption assistance services; [45 C.F.R. 205.50];

(6) All records of child abuse reports and all information obtained in investigating reports of child abuse and neglect; [45 C.F.R. 1340.14, N.J.S.A. 9:6–8.10a];

(7) All information obtained through an investigation of reports of child abuse and neglect; [N.J.S.A. 9:6–8.10a];

(8) All reports of findings reported to the Central Registry; [N.J.S.A. 9:6–8.10a];

(9) Personal facts or circumstances about individuals involved in projects or programs supported by granted awarded under the Child Abuse Prevention and Treatment Act, unless such facts are presented in a summary or statistical form; [45 C.F.R. 1340.20];

(10) Third party reports; [N.J.A.C. 10:133G–2.3];

(11) Any records containing information identifying a third-party source of information, including but not limited to a referral source, other family members, and collateral contacts; [N.J.A.C. 133G–2.3];

(12) Information about persons other than the client; [N.J.A.C. 133G–2.3];

(13) Information which if disclosed would likely endanger any person's life or safety; [N.J.A.C. 133G–2.3];

(14) Information provided to approved agencies regarding the suitability of proposed adoptive parents or members of their households 18 years of age or older. [N.J.S.A. 9:3–54.2]. Interim Confidentiality Order and Stipulation filed on May 11, 2000. The terms of the Interim Confidentiality Order and Stipulation was to remain in full force and effect in an Order filed on June 26, 2002 as "Confidentiality Order and Stipulation" by this Court.

conditions of the Interim Order of May, 2000. Only certain persons were allowed access to these documents, including, "experts retained for purposes of assisting counsel in this action." (Interim Confidentiality Order and Stipulation filed May 11, 2000 ¶ 5). Not surprisingly, the Interveners, Plaintiffs, and Defendants, differ with respect to the scope of the Confidentiality Order as it relates to the release of DYFS' case records.

The Interveners argue that the present Confidentiality Order and Stipulation is overly broad and thus should be modified to allow them to obtain information about the children currently under care and custody of DYFS. Originally, *The Times* requested access to the following: (1) public disclosure of all discovery materials pertaining to child fatality and near fatality cases without redaction and (2) public disclosure of all discovery materials pertaining to living children subject to the redaction of the names or other identifying information pertaining to the children and their families. However, since oral argument on March 3, 2003, the Interveners have modified their request to the following: "(1) all Child Death Reports; (2) all Critical Incident Reports; (3) other documents, including intra-agency memoranda, reviewing DYFS actions in [Child Death and Critical Incident Reports]; (4) any underlying case files involving children in DYFS custody or formerly in DYFS custody that would be considered death or near-death cases under the statute." (*The Times*' Supplemental Submission dated March 6, 2003 at 3). Subsequent to its March 6, 2003 Supplemental Submission and during oral argument on March 14, 2003, the Interveners have further pared down their request of documents. At this juncture, the Interveners are requesting only a small review of the following types of case files from

DYFS: (1) Child Death Reports; (2) Critical Incident Reports; (3) Institutional Abuse Investigation Unit ("IAIU") Reports.

It is the Interveners' contention that a modification of the existing Order will assist in their endeavor to enlighten the public as to the current status of DYFS. Moreover, the Interveners argue that such a modification will identify other children who may be at risk under DYFS' care. On the other hand, Defendants argue that the provisions of the Confidentiality Order are necessary to preserve the integrity of its abuse and neglect reporting system and the privacy interests of children, parents, and foster parents. Specifically, Defendants vehemently contend that all of the current provisions of the Confidentiality Order are necessary to protect the identities of the reporting parties, the children and their biological and foster families who may be involved. Furthermore, Defendants argue that the request by the Interveners is "extremely broad" and would thus jeopardize many individuals involved with DYFS for no apparent purpose. (Defs.['] Opp'n. Br. at 1–2).

The original records sought by the Interveners, *supra* at 5, particularly number two of the Interveners' request[9], was breathtaking in its scope. If modified as originally requested, the Confidentiality Order would permit *all* records of *all* children in DYFS' care (i.e., by definition, children in DYFS are abused or neglected). As *The Times* discussed in its Supplemental Submission and during oral argument on March 14, 2003, it has substantially reduced its list of requested documents once again. Specifically, it has modified its request of all of the Institutional Abuse Investigation Unit ("IAIU") Reports whether the investigation has been "substantiated[10]," "unsubstantiated[11]," and "unfound-

---

**9.** The Interveners requested the entire case records of thousands of children currently under the care of DYFS. Specifically, they requested the following: public disclosure of all discovery materials pertaining to living children subject to the redaction of the names or other identifying information pertaining to the children and their families.

**10.** According to the Support Operations Manual written by DYFS, a case is categorized as "substantiated" upon a preponderance of evidence supporting a finding of abuse or neglect. Sup-

port Operations Manual: Findings and Recommendations § 601(May 1, 2000) (emphasis provided).

**11.** According to the Support Operations Manual, the IAIU uses a finding of "not substantiated" when a preponderance of evidence indicates the actions of the caretaker were either unjustified and/or inappropriate but did not cause serious harm or risk of serious harm to the child. The unjustified and/or inappropriate actions would be cause for concern and need to be addressed by the facility. *Id.* (emphasis provided).

ed [12]" to only those cases where it has been "substantiated or unsubstantiated." (*The Times'* Supplemental Submission dated March 6, 2003 at 3; Oral Argument on March 14, 2003). Lastly, the Interveners argue that they will only be reviewing approximately ten percent of the 1300 IAIU files that are currently available. (*Id.*).

Defendants, on the other hand, argue that the Critical Incident Reports, Child Death Reports, and IAIU Reports should not be released pursuant to *Pansy*. (Defs.['] Response to *The Times'* Supplemental Submission dated March 13, 2003 at 3). Aside from the potential violation of the children's privacy interests, and the loss of anonymity by other parties involved in a child's case, there are also practical considerations of such a production that the Court should weigh in deciding whether to release the reports to the Interveners.[13] (*Id.* at 4). Lastly, Defendants argue that the Court consider the parties' reliance on the Confidentiality Order at issue as the Court in *Pansy* reviewed. Defendants argue that they produced the documents in good faith relying on the fact that their sensitive case records would be protected from disclosure. (*Id.*).

While the Court empathizes with the Defendants' reliance on an Order agreed to by the parties to the litigation, public entities should be sensitive to the reality that events often change circumstances. Moreover, the Court does not need read *Pansy* as requiring wholesale disclosure of sensitive case records during the course of a court proceeding. On the other hand, the Court agrees with Plaintiffs and Interveners that the current Confidentiality Order is overly broad and should be modified for the public to have access to certain DYFS' case records.

Although the Court will limit the broad scope of the current Confidentiality Order, it is, nevertheless, mindful that confidentiality provisions established by the State of New Jersey have a very clear purpose—to protect vulnerable children, to encourage persons with knowledge of the abuse or neglect of children to report such abuse or neglect, and to invite families to openly communicate with professionals to seek the assistance they need. However, the Court must balance those interests with the interest of a broader group of people, the public at large, who have a right to know what is happening in its public agencies. Accordingly, the Court believes that limited information regarding the status of the children under DYFS' care should be subject to disclosure to the public.

### 3. Modification of the Current Confidentiality Order

■ The Court agrees with the parties that identifying information of children currently in custody of DYFS and certain other family members is within the scope of the Confidentiality Order and thus such identifying information cannot be disclosed. In addition, however, the Court will now modify the Confidentiality Order to permit limited disclosure for the Interveners to gain access to certain discovery already disclosed to the Plaintiffs: (1) all Child Death Reports and Critical Incident Reports, including attachments and documents contained within the reports and (2) all reports by the DYFS Institutional Abuse Investigation Unit where the IAIU findings were "substantiated" upon investigation, including any attachments and documents within the reports. Any identifying information as specified in the attached Order (agreed to by all parties after discussion with the Court) will be redacted prior to dissemination.

### 4. Reasonable Limitations

■ The Court has identified documents that may be released upon redaction. Courts also have the discretion to impose reasonable limitations upon the process and the manner in which these documents are to be reviewed, redacted, exchanged, and dis-

---

**12.** The third and final category is "unfounded" and this category is used when no incident occurred and/or the allegation is found to be inherently improbable or admittedly false. *Id.* (emphasis provided).

**13.** According to the Defendants, the number of requests for IAIU Reports, though pared down by *The Times* is still quite voluminous and will be an arduous task to redact as each IAIU Report is at least 100 pages. (Defs.['] Response to *The Times'* Supplemental Submission dated March 13, 2003 at 3–4).

closed. The Court in *Pearson* acknowledged the right to exercise discretion within reasonable limitations pursuant to Federal Rule of Civil Procedure 26(c) to release highly sensitive information. *Pearson,* 211 F.3d at 72. As the *Pearson* Court noted, "[l]egitimate interests in privacy are among the proper subjects of [Rule 26(c)'s] protection." *Id.* Here, the Court recognizes the need for protecting the privacy interests of the children under the care of DYFS. Furthermore, the Court finds that the Defendants have demonstrated good cause for limited protection of their case records. Thus, in an effort to strike that balance between protecting the privacy interests with the public's right to know, the Court will require that the release of documents subject to this Opinion take place in three phases as permitted by Rule 26(c). FED.R.CIV.P. 26(c).

During phase one, all Counsel shall be permitted to inspect the above referenced documents on an "attorneys eyes only" basis in the first instance. In phase two, Defendants will be permitted to redact identifying references in the restricted discovery as embodied within the accompanying Order. The redaction of the first 2000 pages shall be completed within ten (10) days of receiving a list of requested documents from Interveners' Counsel. The time period may be enlarged by agreement of counsel or by further Order of the Court. Finally, in phase three, the attorneys will notify the Court in writing of any dispute that they have been unable to resolve. Any failure to notify the Court of such a dispute will be deemed a waiver of the party's rights. Public disclosure of these specified documents will follow.

## III. *CONCLUSION*

For the reasons stated, the Interveners' Motion for an Order modifying the current Confidentiality Order is granted in part and denied in part. The Defendants' Cross Motion for a Protective Order, for similar reasons, is granted in part and denied in part. Specifically, documents related to (1) "Death Reports," (2) "Critical Incident Reports," and (3) "substantiated reports" in abuse cases, with identifying information redacted, will all be subject to disclosure to the public. The Interveners' Motion in so far as it seeks other DYFS information is denied, in all respects, except that the Interveners and Plaintiffs may move to permit disclosure of a relevant sub-set of "unsubstantiated reports." The Court will also require reasonable limitations on such disclosure by establishing a three step *"failsafe"* process to insure that all identifying information, or other specific information harmful to DYFS children or families, will be redacted.

Ordinarily, there is every good reason to shield records of vulnerable children in foster care. But in the wake of the unimaginable death of Faheem Williams and abuse of his brothers, that protection should not extend to DYFS cases involving "death," "critical incidents," and "substantiated" reports of child abuse. Dedicated DYFS workers need not fear this public scrutiny as it, undoubtedly, will highlight their hard work and, hopefully, lead to greater public awareness and assistance. The ultimate basis for the Court's decision is two-fold—a concern that we all share—the safety and welfare of our children—and the Court's belief that letting in some reasonable sunlight on the way government works will serve to protect these children by providing the resources necessary to accomplish that goal.

An appropriate Order accompanies this Memorandum Opinion.